## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ESTATE OF RAYMOND J.
GUZIEWICZ, *ET AL.*,

    Plaintiffs,

        v.

RENEE P. MAGNOTTA,

    Defendant.

No. 3:14-cv-01742

(JUDGE CAPUTO)

(MAGISTRATE JUDGE SAPORITO)

## <u>MEMORANDUM</u>

Presently before me is Magistrate Judge Saporito's Report and Recommendation (Doc. 93) on the Motion for Summary Judgment filed by Defendant Renee Magnotta ("Defendant" or "Agent Magnotta"). (Doc. 79). For the reasons that follow, the Magistrate Judge's recommendation to deny summary judgment and dismiss Plaintiff's 42 U.S.C. § 1983 false arrest claim and state law abuse of process and intentional infliction of emotional distress claims with prejudice will be adopted.

## I. Background

As set forth in greater detail in Magistrate Judge's Report and Recommendation, this case arises out of criminal charges filed against Raymond Guziewicz ("Raymond") for criminal conspiracy and forgery concerning narcotics prescriptions including Percocet, Oxycontin, and Dilaudid.

On January 27, 2012, a criminal complaint was initiated against Raymond. (Doc. 80-1, "Def.'s Ex. A,"[1] at 2). Included with this complaint was an affidavit of probable cause created by Agent Magnotta, a Narcotics Agent with the Pennsylvania Office of the Attorney General. (Doc. 80, "Def.'s SMF," ¶ 3; Doc. 84, "Pl.'s SMF,"

---

[1]     Defendant's Exhibit A is a printout of the docket for Raymond's state court criminal proceedings.

¶ 3; Doc. 84-5, "Pl.'s Ex. C"[2]).  This affidavit of probable cause relies in large part on a February 22, 2011 phone call betweem Agent Magnotta and Raymond's former physician, Dr. Mark Cruciani.  Dr. Cruciani informed Agent Magnotta he was notified by Medicap Pharmacy that prescriptions were being billed in Raymond's name. (Def.'s SMF ¶ 8; Pl.'s SMF ¶ 8).  He told Agent Magnotta that Raymond was his patient but that these prescriptions were not valid and that Raymond "had either stolen a blank prescription pad or mass produced an authorized prescription and passed them at several different pharmacies."  (Def.'s SMF ¶¶ 4, 8; Pl.'s SMF ¶¶ 4, 8).  However, he also stated Steven Guziewicz ("Steven" or "Plaintiff"), Raymond's son, presented "many" of the prescriptions.  (Def.'s SMF ¶¶ 6, 7; Pl.'s SMF ¶¶ 6, 7).  In addition, Dr. Cruciani told Agent Magnotta the prescriptions were "passed" in six (6) different names: Raymond Guziewicz, Steven Guziewicz, Janine Belles, Joan Guziewicz, William Guziewicz, and Denise Belles.[3]  (Def.'s SMF ¶¶ 10; Pl.'s SMF ¶¶ 11).  Agent Magnotta spoke with other individuals as part of her investigation, including Sam Sebastianelli, a pharmacist at Medicap Pharmacy.  (Magnotta Dep. 31:25).

On January 31, 2012, Raymond was arrested and appeared before a state magisterial district judge for his preliminary arraignment where bail was set at five thousand dollars ($5,000).  (Def.'s Ex. A at 1).  Raymond was held in custody until he was able to post bail on February 2, 2012.  (*Id.*).  Raymond waived his preliminary hearing on February 9, 2012.  (*Id.* at 5).  The next entry on the criminal docket reflects that the case was *nolle prossed*, and the disposition of the case is listed as "Nolle Prosequi WITHOUT PREJUDICE - COMM RESERVES THE RIGHT TO REFILE." (*Id.* at 12; Def.'s SMF ¶ 1; Pl.'s SMF ¶ 1).  Raymond later died on March 18, 2013. (Doc. 93 at 5).

---

[2]     Plaintiff's Exhibit C contains the criminal complaint and affidavit of probable cause at issue in this case.

[3]     "Belles" is Raymond's wife's maiden name.  (Def.'s SMF ¶ 11; Pl.'s SMF ¶ 11).

Plaintiff, appearing both individually and in his role as the administrator filed the initial complaint *pro se* on September 8, 2014 against Agent Magnotta raising claims under 42 U.S.C. § 1983 and state law for malicious prosecution, abuse of process, unreasonable seizure, and intentional infliction of emotional distress. (Doc. 1). Defendant filed a Motion to Dismiss on July 6, 2015, and on September 30, 2016, Plaintiff's personal capacity claim for intentional infliction of emotional distress was dismissed and the remaining claims were permitted to proceed. (Doc. 25; Doc. 46; Doc. 47). On February 1, 2017, Plaintiff filed an amended complaint alleging the same claims as his initial complaint and adding a claim for supervisory liability against Agent Magnotta's supervisor, Jerome Smith. (Doc. 52). Plaintiff eventually obtained counsel, who entered her appearance on May 2, 2017. (Doc. 63). On May 16, 2018, Defendant filed a Motion for Summary Judgment. (Doc. 79). Magistrate Judge Saporito issued a Report and Recommendation on March 13, 2019, recommending summary judgment be denied on Plaintiff's § 1983 and state law malicious prosecution claims and dismissing the remaining claims with prejudice without leave to amend for failure to state a claim.[4] (Doc. 93). Defendant timely filed objections to the Report and Recommendation on March 27, 2019, Plaintiff filed a response to the objections on April 25, 2019, and Defendant filed a reply brief on May 9, 2019. (Doc. 97; Doc. 98; Doc. 99). This matter has therefore been fully briefed and is ripe for disposition.

## II. Legal Standards

### A.    Standard of Review of Objections to a Report and Recommendation

When objections to the magistrate judge's Report are filed, the court must

---

[4]     Specifically, Magistrate Judge Saporito concluded Plaintiff's state law abuse of process claim should be dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(b)(ii), and Plaintiff's claims for intentional infliction of emotional distress under state law and false arrest under § 1983 should be dismissed with prejudice as legally frivolous and for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(b)(i) and (ii). (Doc. 93 at 12-16, 37-38).

conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). However, this only applies to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a *de novo* determination." *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Indeed, the United States Court of Appeals for the Third Circuit has instructed that "providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id.* at 7. In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Uncontested portions of the Report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g.*, *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**B.    Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

Where there is no material fact in dispute, the moving party need only establish

that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial,

and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505.

### III. Discussion

Defendant does not object to the Magistrate Judge's recommendation to dismiss the state law claims for abuse of process and intentional infliction of emotional distress and § 1983 claim for false arrest with prejudice. (*See* Doc. 93 at 37-38). As I find these recommendations are not clearly erroneous, these uncontested portions of the Report and Recommendation will be adopted.

Defendant objects to the Magistrate Judge's findings on the following grounds: (1) Plaintiff is unable to satisfy the favorable termination and probable cause elements for his malicious prosecution claims; (2) this Court lacks supplemental jurisdiction over Plaintiff's state law claim because Plaintiff's federal claim may not proceed for failure to satisfy the malicious prosecution elements; and (3) the Magistrate Judge should have concluded Defendant is entitled to both qualified and sovereign immunity. (*See* Doc. 95, *generally*). In light of these objections, I will review *de novo* whether summary judgment is appropriate on the Plaintiff's state law and § 1983 malicious prosecution claims.

### A.    Elements of Malicious Prosecution

Plaintiff must satisfy the following elements in a malicious prosecution claim under 42 U.S.C. § 1983:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*,

6

318 F.3d 497, 521 (3d Cir. 2003). A claim for malicious prosecution under Pennsylvania law includes the same elements as a § 1983 malicious prosecution claim, except that the state law claim does not require the fifth seizure element. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000) ("[A] plaintiff alleging common law malicious prosecution must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice.").

While Defendant objects to the Magistrate Judge's recommendation to deny summary judgment on Plaintiff's § 1983 and state law malicious prosecution claims, Defendant only specifically objects to the Magistrate Judge's conclusions that Plaintiff satisfied the favorable termination element and that a genuine dispute of material fact exists as to the probable cause element.[5] To that end, I agree with the Magistrate Judge that the first and fifth elements of a § 1983 claim for malicious prosecution, which are uncontested, are beyond dispute. Agent Magnotta initiated criminal proceedings by submitting a criminal complaint and affidavit of probable cause to a state magisterial district judge, Raymond was incarcerated for his inability to pay bail, and he remained bound to appear in court while the criminal proceedings against him remained pending.

### 1. Favorable Termination

To satisfy the favorable termination prong of a malicious prosecution claim, the prior disposition of the criminal case must demonstrate "the innocence of the

---

[5] Defendant objects to the Magistrate Judge's determination on the malice element on the same grounds as the probable cause element: the Magistrate Judge should have found Plaintiff cannot satisfy the malice element because Agent Magnotta had probable cause to initiate proceedings. (Doc. 97 at 9-10). Defendant did not argue Plaintiff is unable to satisfy the malice element even if Agent Magnotta lacked probable cause. As such, Defendant's objection on the malice element is best analyzed together with her probable cause objection.

accused." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009).

> A plaintiff may attempt to indicate his innocence by demonstrating that his prior criminal proceeding terminated in one of the following ways:
>
>> '(a) a discharge by a magistrate at a preliminary hearing, or
>> (b) the refusal of a grand jury to indict, or
>> (c) the formal abandonment of the proceedings by the public prosecutor, or
>> (d) the quashing of an indictment or information, or
>> (e) an acquittal, or
>> (f) a final order in favor of the accused by a trial or appellate court."

*Id.* (quoting *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002). While "a grant of nolle prosequi *can* be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." *Hilfirty v. Shipman*, 91 F.3d 573, 579-80 (3d Cir. 1996) *disapproved of on other grounds by Merkle v. Upper Dublic Sch. Dist.*, 211 F.3d 782, 794 (3d Cir. 2000); *see also Kossler*, 564 F.3d at 187 (discussing how "formal abandonment of the proceedings by the public prosecutor" may satisfy the favorable termination prong).

The parties dispute which standard should be used to determine whether Plaintiff satisfied the favorable termination prong. This dispute is understandable, given the apparent lack of congruity between the Third Circuit's holdings in *Hilfirty* and *Donahue v. Gavin*. In *Hilfirty*, the Third Circuit held:

> [A] grant of nolle prosequi is insufficient to support a claim of malicious prosecution *only in circumstances* where the accused herself enters into a compromise with the prosecution in which she surrenders something of value to obtain the dismissal or where the accused formally accepts the grant of nolle prosequi in exchange for her knowing, voluntary release of any future claims for malicious prosecution.

*Hilfirty*, 91 F.3d at 575 (emphasis added).[6] However, the Third Circuit later held in

---

[6]    Defendant repeatedly asserts the holding of *Hilfirty* is limited to its facts, which, admittedly, differ slightly from the facts of the instant case. In *Hilfirty*, the co-defendants in the underlying criminal case were married and the husband-

*Donahue*:

> [W]hile "a grant of *nolle prosequi* can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably. *Hilfirty v. Shipman*, 91 F.3d at 579-80. A *nol pros* signifies termination of charges in favor of the accused "*only when their final disposition is such as to indicate the innocence of the accused*" [Restatement (Second) of Torts] § 660, cmt. a (emphasis added).

*Donahue*, 280 F.3d at 383. As reflected above, *Hilfirty* appears to recognize that a *nol pros* will satisfy the favorable termination prong unless the plaintiff either enters into a compromise in which he surrenders something of value or accepts the *nol pros* in exchange for a release of future claims for malicious prosecution. Conversely, *Donahue* appears to stand for the proposition that a *nol pros* will *not* satisfy the favorable termination prong unless the final disposition of the *nol pros* "indicate[s] the innocence of the accused." *Id.*

Plaintiff's argument, which embraces the *Hilfirty* approach and was adopted by the Magistrate Judge, is that he has satisfied the favorable termination element because the docket sheet indicates Raymond's criminal case resulted in a *nol pros* and he neither entered into a compromise in which he surrendered something of value nor agreed to release future malicious prosecution claims in exchange for the abandonment of proceedings. Adopting the *Donahue* approach, Defendant argues that the docket,

---

defendant entered into an agreement with the District Attorney to participate in an A.R.D. program. One of the terms of this agreement was that the charges against the wife-defendant would be *nolle prossed*. In concluding the *nol pros* order was sufficient to establish favorable termination of proceedings against the wife-defendant, the Court noted the wife-defendant was not a party to the agreement and that the Court of Common Pleas issued an independent order granting the prosecution's *nol pros* motion against the wife-defendant on the same day as it approved the husband-defendant's compromise agreement. *Id.* at 575-77. Despite her repeated assertion that *Hilfirty* is limited to its facts, Defendant cited to no case law to support her argument. Accordingly, upon review of *Hilfirty* and other relevant Third Circuit case law, I conclude the holding of *Hilfirty* is not limited to its specific factual scenario.

which on its face reads "Nolle Prosequi WITHOUT PREJUDICE - COMM RESERVES THE RIGHT TO REFILE[,]" does not demonstrate Raymond's innocence. (Def.'s Ex. A at 12).

The non-precedential Third Circuit opinions cited by the parties reflect this divide as to which standard applies. For instance, Defendant cites to *DiFronzo v. Chiovero*, 406 F. App'x 605 (3d Cir. 2011) in support of her position. In concluding the criminal proceedings did not terminate in the plaintiff's favor, the Third Circuit explained it lacked "any information indicating the innocence of the accused" because neither the text of the order[7] nor anything else in the record indicated why the *nol pros* was granted." *Id.* at 609. The only mention of *Hilfirty* in *DiFronzo* is a single quote from the case, the same quote used in *Donahue*. *See id.* ("This Court has noted that while 'a grant of nolle prosequi can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably.'") (quoting *Hilfirty*, 91 F.3d at 579-80). Plaintiff, on the other hand, cites to *Malcolmb v. McKean*, 535 F. App'x 184 (3d Cir. 2013) to support his position. Finding the plaintiff's complaint should not have been dismissed on the favorable termination prong, the Third Circuit stated, "[o]ur precedent is clear. A nolle prosequi determination is a favorable termination unless the accused has entered into a compromise or surrendered something of value to obtain that outcome. There is no evidence that Malcolmb obtained the nolle prosequi through either of these outcomes." *Id.* at 187. The opinion repeatedly references *Hilfirty* in its analysis but did not make a single reference to *Donahue*. *See id*. at 186-87.

Perhaps recognizing the lack of harmony between *Hilfirty* and *Donahue*, the

---

[7]     The *nol pros* order in *DiFronzo* reads: "AND NOW, this 28th day of NOVEMBER, 2007, upon the request of Assistant District Attorney Andrew S. Gibson, the Commonwealth's motion for *nolle prosequi* is hereby GRANTED as to all charges in the above-named case." (*DiFronzo*, 406 F. App'x at 609 n.9).

Third Circuit recently discussed the favorable termination standard in *Geness v. Cox*, 902 F.3d 344 (3d Cir. 2018). While the Third Circuit affirmed the district court's dismissal of the plaintiff's § 1983 claim on other grounds, the Court made clear that the district court's favorable termination analysis "does not square with our precedent." *Id.* at 356. The Court adopted the actual innocence approach from *Donahue* with a fact-based inquiry that effectively expands when a *nol pros* order would sufficient to establish favorable termination beyond previous interpretations of *Donahue* like that in *DiFronzo*. *Id.*

In conducting this fact-based inquiry into innocence, courts may "consider[], among other things, the "underlying facts" of the case, the "particular circumstances" prompting the *nol pros* determination, and the substance of the "request for a *nol pros* that . . . result[ed] in the dismissal." *Id.* (first quoting *Kossler*, 564 F.3d at 189, 984, then quoting *Donahue*, 280 F.3d at 384) (citations omitted). District courts are not limited to "the four corners of the order" for this fact-based inquiry. *Id.* Applying this approach, the *Geness* Court concluded that the *nol pros*, which was based on "'insufficient evidence' unquestionably provides 'an indication that the accused is actually innocent of the crimes charged.'" *Id.* (quoting *Hilfirty*, 91 F.3d at 580). Additionally, the Court found "[t]he fact that the charges were dismissed without prejudice is also not fatal to favorable termination." *Id.* at 356 n.8 (citing *Haefner v. Burkey*, 534 Pa. 62, 626 A.2d 519, 521 n.2 (1993).

In light of *Geness*, the fact that the docket implies the charges against Raymond could have been reinstated is insufficient to conclude the proceedings did not terminate in Plaintiff's favor. *Id.* The underlying facts of Raymond's case as presented in the summary judgment record indicate Raymond was actually innocent of the crimes charged and the *sua sponte nol pros* of his case therefore satisfies the favorable termination element. Steven testified in his deposition that his father was not involved in the underlying criminal conduct and accepted a plea deal on his own criminal charges to this effect, even though the deal was after the *nol pros* order was

entered in Raymond's case. (Steven Dep. 22:16-18, 41:7, 46:18-24, 75:11-15). Steven explained that at first, he filled only his father's valid controlled substance prescriptions and only later began passing the forged prescriptions once he became more comfortable at Medicap, realizing the pharmacist "didn't ask a lot of questions." (*Id.* at 27:13-28:4). He also described how he forged prescriptions in an identical 2005 criminal case against both himself and his father and referenced this information in discussing his actions that formed the basis of the 2012 criminal case—"I was taking [Raymond's] legitimate prescription so he wouldn't know it was missing, and the photocopies I would either fill them in their original photocopy form or I would white out certain relevant portions and change the medication or the name." (*Id.* at 23:8-14, 27:21-22; 61:3-12).

The evidence also reflects Raymond was treated by Dr. Cruciani beginning in 2004 for degenerative arthritis in his hips and hands from working for the United Parcel Service ("UPS") for over thirty (30) years and that he filled over four hundred (400) valid narcotic and non-narcotic prescriptions at Medicap Pharmacy over a six-and-a-half (6.5) year period. (*Id.* at 28:18-23; Doc. 84-4, "Pl.'s Ex. B"[8]). Additionally, the charges initiated against Steven and Raymond by Agent Magnotta in an identical case in 2005 culminated in a *nol pros*.[9] (Steven Dep. 20:6-8). Lastly, a Medicap Pharmacy surveillance tape depicting only Steven passing fraudulent prescriptions was available to investigators prior to the entry of the *nol pros* order and at least partially corroborates Steven's testimony as to Raymond's innocence. (*Id.* at 45:5-10; Magnotta Dep. 40:5-42:12). Accordingly, the record supports a finding that

[8]    Plaintiff's Exhibit B is a printed report listing the prescriptions filled by Raymond as a patient at Medicap Pharmacy between October 23, 2003 and December 4, 2012.

[9]    Steven testified Agent Magnotta told him the following at his preliminary hearing for the 2012 charges: "I know that your father wasn't involved in this. I know he's sick. But you're going to have to wear the big boy pants and take responsibility for this if you want to help him." (Guziewicz Dep. 39:18-22).

the proceedings terminated in Raymond's favor with the *nol pros* order.

## 2. Probable Cause

To succeed on a malicious prosecution claim, a plaintiff must demonstrate that the prosecution was initiated without probable cause. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). "[P]robable cause . . . exists when the facts and circumstances within the officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be [charged]." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016). Whether the plaintiff actually committed the charged offense or was acquitted is irrelevant to a probable cause analysis. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005). The Supreme Court has observed, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317 (1983). "For this reason, the Court has eschewed any 'rigid demand that specific tests be tests be satisfied' and has instead prescribed a 'totality-of-the-circumstances approach' to the probable cause determination." *Dempsey*, 834 F.3d at 467-68 (quoting *Gates*, 462 U.S. at 230-31, 103 S. Ct. 2317). "Typically, the existence of probable cause in a section 1983 action is a question of fact." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1994).

> An officer seeking a warrant on the basis of probable cause must follow a two-step process. First, the officer swears to an affidavit containing a summary of the events that she believes give rise to probable cause. In doing so, the officer "is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." Second, the officer presents the affidavit to a neutral magistrate, who conducts his own independent review of the evidence to determine whether it does, in fact, establish probable cause, and, if so, issues a warrant.

*Dempsey*, 834 F.3d at 469 (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir.

13

2000).

A neutral magistrate being presented with all accurate and probative information is essential in advancing justice. *See California v. Acevedo*, 500 U.S. 565, 587 n.2, 111 S. Ct. 1982 (1991) ("[T]he detached scrutiny of a neutral magistrate . . . is a more reliable safeguard [against Fourth Amendment violations] than the hurried judgment of a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime.'") (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367 (1948)). "If, however, the officer does not provide the neutral magistrate with an accurate affidavit of probable cause, the protection afforded by the magistrate's review is lost; the magistrate will be unable to assess the circumstances for probable cause because he will not know what those circumstances actually are." *Dempsey*, 834 F.3d at 469.

Defendant objects to the Magistrate Judge's determination that a genuine dispute of material fact exists as to the whether Agent Magnotta had probable cause to initiate criminal proceedings against Raymond. Plaintiff argues the affidavit submitted by Agent Magnotta in support of the application for the arrest warrant and criminal complaint was false or misleading and that submission of an accurate affidavit would have been insufficient to establish probable cause. To succeed on this point, Plaintiff must show: "(1) that the police officer knowingly and deliberately or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000).

### 1. False Statements and Omissions

Plaintiff argues three (3) facts were omitted or distorted in Agent Magnotta's affidavit. First, Dr. Sebastianelli only identified Steven as having passed the prescriptions; he never told Agent Magnotta that Raymond passed any of the fraudulent prescriptions listed in the affidavit. (Doc. 85 at 14). Second, Raymond had

been a regular customer at Medicap Pharmacy for six-and-a-half (6.5) years, filling both narcotic and non-narcotic prescriptions. (*Id.* at 13). Third, the Medical Expense Report available to Agent Magnotta at the time she prepared the affidavit reflects Raymond filled nearly four hundred (400) valid prescriptions between October of 2004 and February of 2011, including narcotics prescriptions written by Dr. Cruciani. (*Id.*; Magnotta Dep. 36:12-37:3). While two of these facts may be properly analyzed as reckless omissions, the statement attributed to Dr. Sebastianelli in the affidavit about passing prescriptions should be analyzed as a false statement.

### a.    False Statement

Agent Magnotta articulated the information she obtained from Dr. Sebastianelli in her affidavit as follows:

> This agent was advised by Sam Sabastenelli R. Ph., @ Medicap Pharmacy, that he knows Raymond and Steven Guziewicz from coming into the pharmacy with Dr. Cruciani's prescriptions. Sabastentelli stated that he didn't remember a female coming in with any of the above prescriptions; *always either Steven or Raymond Guziewicz.*

(Pl.'s Ex. C at 3 (emphasis added)). This statement implies Dr. Sebastianelli told Agent Magnotta that both Steven and Raymond presented the fraudulent prescriptions for Joan and William Guziewicz. Even to the extent the term "coming in with" does not expressly mean passing the prescriptions, this statement nevertheless evokes the strong inference that Steven and Raymond both passed the prescriptions.

Agent Magnotta's own deposition testimony reflects that Dr. Sebastianelli never told her both Steven and Raymond passed the prescriptions. Indeed, Agent Magnotta testified that Dr. Sebastianelli "could not identify Raymond as having passed any forged prescriptions" and that he never indicated Raymond filled unlawful prescriptions. (Magnotta Dep. 37:12-16; 46:5-47:10, 50:3-11).[10] Agent Magnotta's

---

[10]    Additionally, when Dr. Sebastianelli testified in the Guziewiczs' criminal proceedings, he "clearly identified" Steven as having presented "a number of the forged prescriptions" but was unable to testify "that anybody other than [Steven]

15

statement therefore falsely indicates that Mr. Sabastianelli told her that Raymond passed the fraudulent prescriptions. Agent Magnotta therefore had obvious reasons to doubt the accuracy of her statements, as she directly attributed the assertion that either Steven or Raymond came in with the forged prescriptions to Dr. Sebastianelli even though he was unable to identify whether Raymond passed any of these prescriptions. *See Wilson*, 212 F.3d at 788 ("An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'") (quoting *United States v. Clapp*, 56 F.3d 795, 801 n.6 (3d Cir. 1995)).

### b. Reckless Omissions

"Omissions are made with reckless disregard where 'an officer withholds a fact in his ken that [a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Andrews v. Scuilli*, 853 F.3d 690, 698 (3d Cir. 2017) (quoting *Wilson*, 212 F.2d at 788) (internal quotation marks omitted). Yet, courts "cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip. . . ." *Wilson*, 212 F.3d at 787.

Plaintiff argues Agent Magnotta recklessly omitted from her affidavit Raymond's relationship with Medicap Pharmacy as a legitimate customer for over six-and-a-half (6.5) years during which he filled almost four hundred (400) valid prescriptions. (*See* Magnotta Dep. 33:20-36:8; Pl.'s Ex. B). This information gives context for why Raymond had narcotics prescriptions in his name and was present at Medicap Pharmacy during Agent Magnotta's investigation. Without this information,

---

presented any of the prescriptions." (Steven Dep. 44:14-24). This later testimony by Dr. Sebastianelli confirms Agent Magnotta's deposition testimony that Dr. Sebastianelli was unable to state whether Raymond passed any of the fraudulent prescriptions.

the affidavit supports the inference that Raymond only went to Medicap Pharmacy to pass fraudulent prescriptions. As this information was available at the time Agent Magnotta drafted her affidavit and would dispel such a false inference by the reviewing magistrate, a reasonable person would recognize this was more than a potentially evocative detail.

## 2. Materiality

Since there is sufficient evidence which shows Agent Magnotta made a false statement and omitted probative information in her probable cause affidavit, I will reconstruct the affidavit and determine whether these statements were "material, or necessary, to the finding of probable cause." *Sherwood*, 113 F.3d at 399; *see also Wilson*, 212 F.3d at 789 (explaining that courts determine the materiality of the misstatements and omissions by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determin[ing] whether or not the 'corrected' warrant affidavit would establish probable cause"). The reconstructed affidavit must be read with a "common sense approach" upon consideration of "a totality-of-the-circumstances." *See Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016).

The probable cause affidavit has been reconstructed as follows:

> On February 22, 2011, this agent was advised by Dr. Mark Cruciani that a former patient, identified as Raymond Guziewicz had either stolen a blank prescription, or mass produced an authorized prescription, and passed them at several different pharmacies.
>
> Dr. Cruciani stated that he was treating Raymond Guziewicz since 2004, for a series of health issues and was prescribed Percocet. Dr. Cruciani advised that he was contacted by the Medicap Pharmacy, located at 702 North Blakely Street, Dunmore, Pa. (570)-342-8727, that there were several patients with the same address, that were filling Dr. Mark Cruciani's prescriptions for Percocet, Dilaudid, and Oxycontin.
>
> Dr. Cruciani continued to state that the patients [sic] names that were used were; [sic] Raymond Guziewicz, Steven Guziewicz, Janine Belles, Joan Guziewicz, William Guziewicz and Denise Belles. Dr. Cruciani stated that the only patient he had was Raymond Guziewicz. Dr. Cruciani stated that his son, Steven Guziewicz did accompany his father at visits.
>
> On February 23, 2011, this agent went to the Medicap Pharmacy, and

17

retrieved 26 prescriptions that were all issued in the above names.

The following prescriptions were issued in the name of JOAN GUZIEWICZ:

| | | |
|---|---|---|
| 11-15-10 | Percocet10/325mg | #120 |
| 12-13-10 | Percocet10/325mg | #120 |
| 1-24-11 | Oxycontin 40mg | #90 |
| 2-7-11 | Percocet7.5/500mg | #120 |
| 12-30-10 | Oxycontin 40 mg | #90 |
| 1-10-11 | Percocet10/325mg | #120 |

The following prescriptions were issued and filled in the name of WILLIAM GUZIEWICZ [sic]

| | | |
|---|---|---|
| 11-16-10 | Percocet 10/325mg | #120 |
| 12-15-10 | Percocet 10/325mg | #120 |
| 1-12-11 | Percocet 10/325mg | #120 |
| 2-8-11 | Percocet 10/325mg | #120 |

This agent was advised by Sam Sabastenelli [sic], R. Ph. @ Medicap Pharmacy, that he knows Raymond and Steven Guziewicz from coming into the pharmacy with Dr. Cruciani's prescriptions. Sabastianelli stated that he didn't remember a female coming in with any of the above prescriptions[.]~~; always either Steven or Raymond Guziewicz.~~ *Sabastenelli did not state that Raymond presented any of the above prescriptions.*

*Based on a printed report obtained from the pharmacy, Raymond Guziewicz had been a regular customer of Medicap Pharmacy for six-and-a-half (6.5) years. Between October 2004 and February 2011, Raymond Guziewicz filled approximately 400 valid prescriptions, including over 100 narcotics prescriptions issued by Dr. Cruciani.*

On November 16, 2011, the above prescriptions were entered into the Regional Evidence Program and assigned Inventory # BN800434.

Also, on this date, this agent spoke with Dr. Mark Cruciani, who faxed this agent a signed Patient Medication Agreement, which was signed by Raymond Guziewiczon June 22, 2007.

Dr. Cruciani also advised that he personally called Raymond Guziewicz @ (570) 341-0484, and advised Guziewicz that he was being discharged from the medical practice, due to forging his prescriptions.

On January 5, 2012, this agent placed a call to Steven Guziewicz @ (570) 341-0484; and spoke with a male who identified himself as "William" (Guziewicz); who is Steven's brother. This agent asked William, if Steen was home. William stated that Steven was not, but would be back later. This agent left this agent's cell phone number, and asked if William would have Steven return this agents [sic] call. William advised that he would give the message.

No return call from Steven Guziewicz was received.

Defendant's objections to the Magistrate Judge's probable cause determination primarily concern the materiality prong of the probable cause analysis. Specifically, Defendant argues the Magistrate Judge failed to acknowledge that probable cause existed for the conspiracy charge.

The following information in the reconstructed affidavit links Raymond to the fraudulent prescriptions: (1) Dr. Cruciani's statement that he learned his prescriptions for Percocet, Dilaudid, and Oxycontin were filled in the names of several people with the same address, including Raymond; (2) Raymond was Dr. Cruciani's patient; (3) Dr. Cruciani discharged Raymond as his patient; (4) Dr. Sebastianelli knew Raymond from when he came into the pharmacy to fill prescriptions; and (5) Dr. Sebastianelli did not remember a woman presenting any of the prescriptions specified in the affidavit. These facts could support a finding that Agent Magnotta had probable cause for the forgery charges. However, the reconstructed affidavit also notes Raymond Dr. Cruciani's patient since 2004 and had a six-and-a-half (6.5) year history with Medicap Pharmacy during which he filled roughly four hundred (400) valid prescriptions, including valid narcotics prescriptions from Dr. Cruciani.[11] As recognized by the Magistrate Judge, these facts could also support an alternate conclusion that Raymond was merely the victim of a fraudulent scheme, especially given the absence of any facts that show Raymond actually passed the fraudulent prescriptions.[12]

---

[11]      Agent Magnotta admitted in her deposition that her conversation with Dr. Cruciani alone would be insufficient to establish probable cause to initiate proceedings against Raymond. (*See* Magnotta Dep. 31:6-13).

[12]      Contrary to Defendant's argument, I find the Magistrate Judge drew this conclusion as to all of the charges against Raymond, including the conspiracy charg[es]. Specifically, the Magistrate Judge concluded that the reconstructed affidavit suggested "Raymond was a victim rather than the perpetrator of a fraudulent *scheme*." (Doc. 93 at 30 (emphasis added)). This suggests the Magistrate Judge considered the reconstructed affidavit as to all of the charges

Moreover, the only information presented in the affidavit connecting Raymond to the fraudulent scheme is his relationship to Steven and the fact that he and Steven were seen at Medicap Pharmacy together. Steven's criminal history, which was known by Agent Magnotta but was not mentioned in the affidavit, will not be considered for that reason. (Steven Dep. 22:16-18 (discussing his prior conviction in 2005 on similar facts in criminal proceeding initiated by Agent Magnotta); Magnotta Dep. 56:17-57:16).[13] Case law from the Third Circuit suggests an individual's mere presence at or near where a crime occurred may not on its own establish probable cause for a conspiracy. *Cf. United States v. McGlory*, 968 F.2d 309, 325 (3d Cir. 1992) (adopting the mere presence rule from the Eighth Circuit and determining the defendant's mere presence near a drug transaction and the fact that he was unemployed yet carrying money was insufficient to show participation in a conspiracy); *United States v. Butts*, 704 F.3d 701, 704 (3d Cir. 1983) ("Mere presence at a given location cannot in and of itself constitute probable cause to arrest [for constructive possession of a stolen check]."). As such, a reasonable jury could conclude from the reconstructed affidavit that Raymond was the victim, rather than a participant in the fraudulent scheme. For these reasons, I agree with the Magistrate Judge that Plaintiff has shown a genuine dispute of material fact as to whether criminal proceedings were initiated against Raymond without probable cause.

Defendant's only objection to the Magistrate Judge's conclusion on the malice element of malicious prosecution claim is that the Magistrate Judge improperly found a genuine dispute of material fact on the probable cause issue. Given that I also find

---

associated with the fraudulent prescriptions, including conspiracy.

[13] Even assuming Steven's criminal history was mentioned in the probable cause affidavit, Raymond's relationship with Steven would be insufficient to support a finding of probable cause on its own. *See United States v. Burton*, 288 F.3d 91, 99 (3d Cir. 2002) ("Burton's association with known drug dealers is insufficient, by itself, to support probable cause[.]").

a genuine dispute of material fact exists as to probable cause element and Defendant did not specifically object to the Magistrate Judge's conclusion that this factual dispute creates a factual dispute on the malice element of malicious prosecution, I will adopt this finding because it is not clearly erroneous.[14]  Summary judgment will therefore be denied on Plaintiff's § 1983 and state law claims for malicious prosecution.

## B.    Subject Matter Jurisdiction

Defendant also objects to the Magistrate Judge's Report and Recommendation on the basis that this Court lacks supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3) (allowing courts to decline exercising supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction").  This objection is premised on the argument that Plaintiff's federal claims fail as a matter of law.

Pursuant to 28 U.S.C. § 1367(a), "district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within

---

[14]    Defendant reasserts her summary judgment argument that Plaintiff may not proceed with his malicious prosecution claim because Raymond waived his preliminary hearing in his criminal proceedings.  Even though the Magistrate Judge did not address this issue, Defendant's objection on this basis will be overruled.  Defendant cites no authority in support of this position, and instead attempts to prove her point by distinguishing the instant case from my decision in *McCullough v. Spathelf*, in which I declined to hold that "McCullough's waiver of the preliminary hearing precludes him from stating a claim for malicious prosecution."  No. 3:17-cv-1856, 2018 WL 1757510, at *5 (M.D. Pa. Apr. 12, 2018).  Defendant argues the instant case differs from *McCullough*, in which the underlying criminal case was *nolle prossed* for lack of merit.  Because I have already found that Raymond's criminal proceedings terminated in his favor, this distinction is insignificant.  Defendant also asserts this case differs from *McCullough*, claiming "if the Plaintiff's Decedent performed no criminal activity, he was probably the only person on earth [sic] to know that." (Doc. 97 at 11).  However, as Steven performed the underlying criminal activity without his father's knowledge, he knows his father did not participate in forging the prescriptions at issue and testified to that effect in his deposition.  (Steven Dep. 20:14-24, 21:8-10, 41:7).

such original jurisdiction that they form part of the same case or controversy." *See also Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir. 1991). For the reasons discussed above, summary judgment on Plaintiff's § 1983 malicious prosecution claim is improper by virtue of the genuine dispute of material fact on the probable cause element. As the federal malicious prosecution claim has not been dismissed and the state malicious prosecution claim is based on the exact same facts such that it is part of the same case or controversy, I need not address Defendant's argument further. Defendant's objection will be overruled.

## C. Sovereign Immunity

Defendant raises two (2) sovereign immunity-based objections to the Magistrate Judge's Report and Recommendation—the Magistrate erroneously denied both qualified immunity on Plaintiff's § 1983 malicious prosecution claim and sovereign immunity under Pennsylvania law on Plaintiff's state law claim for malicious prosecution.

### 1. Qualified Immunity

"'Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093 (2012)). The Third Circuit has remarked that qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Blackhawk v. Pa.*, 381 F.3d 202, 215 (3d Cir. 2004). "In considering the applicability of qualified immunity, courts engage in a two-pronged examination." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, a court decides "whether the facts that a plaintiff has shown make out a violation of a constitutional right." *Id.* If at the conclusion of this analysis a court finds that no constitutional violation took place, then the court must enter judgment in the defendant's favor. However, if a constitutional violation is found, a court must then determine "whether

the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009). If the right violated was "clearly established," then the official is not entitled to qualified immunity.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664. "[E]xisting precedent must have placed the statutory or constitutional question beyond debate[.]" *Id.* The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2944. Essentially, "in light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This may be the case "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct violated constitutional rights." *Id.* at 740 (citation omitted).

Defendant argues the Magistrate Judge's application of the clearly established prong of the qualified immunity standard was not sufficiently specific to the circumstances confronting Agent Magnotta at the time she prepared the affidavit. *See District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 590 (2018) ("Thus, we have stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'") (quoting *White v. Pauly*, 580 U.S. ___, 137 S. Ct. 548, 552 (2017) (*per curiam*)). The Supreme Court clarified the requisite degree of specificity in *Wesby*, explaining that "[w]hile there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074 (2011)).

The Magistrate Judge appropriately discussed *Andrews v. Scuilli*, in which the Third Circuit held that "the right to be free from prosecutions on criminal charges that

lack probable cause was also known and clearly established at the time [the officer] prepared his affidavit." 853 F.3d 690, 705 (3d Cir. 2017). The facts in *Andrews* are notably similar to those in the instant case—summary judgment on a malicious prosecution claim was denied where a police officer prepared an affidavit of probable cause to arrest and initiate proceedings against the plaintiff based on information from an informant, and the affidavit was found to contain falsehoods and omissions. *Id.* at 695-96, 698-99, 705. While the conduct at issue in *Andrews* occurred in November of 2012 and the conduct at issue in the initial case occurred in January of 2012, the Third Circuit has nevertheless recognized "the right to be free from prosecutions on criminal charges that lack probable cause" as of at least 2002 when *Donahue* was decided. *Id.* at 705 (citing *Donahue*, 280 F.3d at 380. Accordingly, Defendant is not entitled to qualified immunity on the § 1983 malicious prosecution claim.

2.    **State Sovereign Immunity**

Pursuant to Article I, Section 11 of the Pennsylvania Constitution, the General Assembly of Pennsylvania declared that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Const. Stat. § 2310. Pennsylvania courts have held that "when an employee of a Commonwealth Agency was acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims." *Minor v. Kraynak*, 155 A.3d 114, 121-22 (Pa. Comw. Ct. 2017). To determine whether a state employee is protected by sovereign immunity, a court considers (1) whether the employee was acting within the scope of his or her employment; (2) whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and

(3) whether the act fits within one of the nine (9) exceptions to sovereign immunity.[15] *Id.*

Neither party contends any of the statutory exceptions to sovereign immunity apply to this case. Rather, Defendant's challenge to the Magistrate Judge's recommendation to deny sovereign immunity incorporates her earlier objection that the conspiracy charges show Agent Magnotta had probable cause to initiate criminal proceedings against Raymond. According to Defendant, because Agent Magnotta had probable cause, she was acted within the scope of her employment and is therefore entitled to sovereign immunity under Pennsylvania law. However, for the reasons discussed above, Plaintiff has demonstrated a genuine issue of material fact as to whether Agent Magnotta had probable cause to initiate criminal proceedings against Raymond. This genuine dispute of material fact extends to the issue of sovereign immunity. Initiating criminal proceedings against Raymond without probable cause would be outside the scope of Agent Magnotta's employment because "'it no longer serves the interests of the employer.'" *Guziewicz v. Magnotta*, No. 3:14-cv-01742, 2016 WL 5723727, at *4 (M.D. Pa. Sept. 30, 2016) (quoting *Perkins v. Staskiewicz*, No. 1:CV-08-1651, 2009 WL 693176, at *4 (M.D. Pa. Mar. 13, 2009). Accordingly, Defendant is not entitled to sovereign immunity on Plaintiff's state law malicious prosecution claim at this time.

### IV. Conclusion

For the above stated reasons, the Magistrate Judge's Report and Recommendation (Doc. 93) will be adopted and Defendant's Motion for Summary Judgment (Doc. 79) will be denied. Plaintiff's § 1983 false arrest claim and state law

---

[15] These nine (9) exceptions are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522.

claims for intentional infliction of emotional distress and abuse of process will be dismissed with prejudice.

An appropriate order follows.


July 3, 2019                                          /s/ A. Richard Caputo
Date                                                   A. Richard Caputo
                                                       United States District Judge